Moses DAVIS, Jr., et al., for themselves Individually and as members and representatives of a class of other persons similarly situated, Plaintiffs-Appellants,

v.

James HOWARD et al., Defendants-Appellees.

No. 75–3799.

United States Court of Appeals, Fifth Circuit.

Oct. 17, 1977.

Thomas L. Carter, Jr., Atlanta, Ga., Jules Bernstein, Phillis Payne, Washington, D.C., for plaintiffs-appellants.

David Crosland, Robert H. Stroup, Atlanta, Ga., for Local 1644 et al.

A. L. Zwerdling, Gen. Counsel, Janet G. Kohn, Larry P. Weinberg, Washington, D.C., for AFSCME.

John E. Dougherty, Asst. City Atty., Dept. of Law, Atlanta, Ga., for defendants-appellees.

Before GODBOLD and CLARK, Circuit Judges, and HOFFMAN *, District Judge.

PER CURIAM:

The question presented by appellants before the trial court was whether arbitration is a factual issue going beyond Article XX of the AFL–CIO Constitution. That provision supplies settlement procedures for internal disputes among AFL–CIO affiliates.[1] Our question on appeal is, however, whether the trial court properly employed Rule 12(b)(6), F.R.C.P., in disposing of that issue.

The appeal arises from an alleged class action filed on behalf of a group of employees who were, at the time of filing, employed by the City of Atlanta, Georgia (City) and also associated with the Laborers' International Union of North America, AFL–CIO (LIU). Their complaint alleged violation of the law by City officials in that they allegedly wrongfully and discriminatorily deprived appellant employees of grievance representation by LIU and union dues checkoff to LIU. Also, they alleged that appellee City and its officers joined in a conspiracy with appellee American Federation of State, County and Municipal Employees and its locals (AFSCME) to deprive them of the two representational practices they claim as rights under 42 U.S.C. §§ 1983, 1985. Jurisdiction was alleged to exist under 28 U.S.C. §§ 1331 and 1343.

The individually named appellants and their alleged class members include those employees of the City who have executed

---

* Senior District Judge of the Eastern District of Virginia, sitting by designation.

1.  Article XX, Section 2 declares:
    "Each affiliate shall respect the established collective bargaining relationship of every other affiliate. No affiliate shall organize or attempt to represent employees as to whom an established collective bargaining relationship exists with any other affiliate. For purposes of this article, the term 'established collective bargaining relationship' means any situation in which an affiliate, or any local or other subordinate body thereof, has either (a) been recognized by the employer (including any governmental agency) as the collective bargaining representative for the employees involved for a period of one year or more, or (b) been certified by the National Labor Relations Board or other federal or state agency as the collective bargaining representative for the employees."

dues deduction authorization and designated grievance representation cards in favor of LIU. During 1974 a substantial number of City employees filed such authorization cards in compliance with City labor representation ordinances, and LIU did in fact represent them throughout 1974.

However, in January, 1975, appellants allege that the City terminated LIU's status as a representative of City employees. Further, they claim this termination or denial of representation by the City was abrupt and arbitrary insofar as it occurred over repeated employee protest and without reference to any standard, rule, or administrative procedure. Simultaneous with this withdrawal of recognition was the City's continuation to accord AFSCME the right of employee grievance representation which it had denied to LIU.

On January 20, 1975, the City adopted an ordinance to establish dues checkoff procedures where employees may submit executed enrollment cards for "any organization recognized by the City Council and approved by the Mayor by ordinance . . ."[2] In addition to such recognition, an organization "must have been designated as the organization of which the employee is a member, on the above dues authorization card of such employee, by more than one-half of the total number of eligible employees . . . ." The Ordinance specifies the employee procedure for withdrawal or termination of dues authorization cards executed prior to, or after, the effective date of the Ordinance. Finally, in July, 1975, the City publicly announced that AFSCME had submitted the requisite number of authorization cards to entitle it to dues checkoff under the Ordinance. The City thereafter began to deduct employee dues and remit them to AFSCME. Appellants allege disparate and discriminatory administration

in that AFSCME was treated as a "recognized" employee organization even though, appellants argue, LIU in fact held over one-half of the authorization cards for eligible employees.

Appellants' complaint, with jury demand, alleged four separate counts, three of which were founded on 42 U.S.C. §§ 1981, 1983 and 1985. Count III, alleging violation of the Georgia Constitution and Code, was grounded upon 28 U.S.C. §§ 1331 and 1343. Counts I, II and III seek injunctive relief. The subject matter of Count I is union representation in employment grievances; Count II concerns membership dues checkoff procedures; Count III incorporates the operational facts of the preceding two counts in alleging violation of Georgia state law; Count IV claims malicious and willful injury from the facts of all prior counts, infringements attributable to only defendants who are neither associated with governmental subdivisions nor departments. Count IV is appellants' sole claim for money damages.

The City and its various officers moved to dismiss the complaint pursuant to Rule 12(b)(6) F.R.C.P., for failure to state a claim upon which relief may be granted. Specifically, they charged the complainant with disregard of Rule 8(a)(2), F.R.C.P., which mandates that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief . . . . ."

After appellants responded by brief to the City's Rule 8(a)(2) motion to dismiss, AFSCME appeared and moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). In support of their dismissal motion, AFSCME submitted a photocopy of the AFL–CIO Constitution (Attachment A), together with a memorandum of law.[3] After citing Arti-

---

**2.** Ordinance, City of Atlanta, Georgia, Adopted and Approved 1/20/75, ". . . To Authorize and Direct the Commissioner of Finance to Deduct Monthly Dues from the Wages and Salaries of Employees: To Pay Certain Employee Organizations Amounts So Collected [and] To Define Said Employee Organization . . . . ."

**3.** Two salient aspects of the record have impact on our consideration: neither were the facts supporting the 12(b)(6) motion sworn to as being within an individual's personal knowledge, either directly in the motion itself, or by way of affidavit; nor was the attached photocopy, purporting to represent a AFL–CIO Constitution, verified as true, currently in effect, or jurisdictional over any or all of the parties.

cle XX of the Constitution, AFSCME concludes: "LIU, as an AFL–CIO affiliate, has bound itself to pursue AFL–CIO exclusive procedure for resolution of intra-union disputes, the complaint should be dismissed as to the union defendants and their officers." Also provided was the written "Determination Re: City of Atlanta, Ga.," before the Impartial Umpire under the AFL–CIO Internal Disputes Plan, Case No. 74–25, Dated: May 2, 1974, in which it was found that LIU violated Sections 2 and 5 of Article XX of the AFL–CIO Constitution in its organizational campaign against AFSCME.

Appellants filed a motion for temporary restraining order, together with affidavits of LIU regional manager and a staff representative in which a conspiracy to refuse checkoff and grievance representation was attributed to the City and AFSCME. An evidentiary hearing was scheduled for October 7, 1975.

Also filed were notices to take deposition and a broad request to produce documentary evidence, pertaining to city employees in service since January 1, 1970. A motion for protective order was promptly filed with attachments, including an affidavit of a city official relative to the impracticability of the request to produce. AFSCME served notice to take the deposition of the General President of LIU. LIU noticed for deposition two officials of the City. In its motion for protective order, AFSCME also asserted the pendency of motions to dismiss pursuant to Rule 12(b)(1) and (6). Filed with their motion was an affidavit of an AFSCME representative stating harassment and intimidation by LIU representatives of AFSCME member employees and officials.

The trial court granted the motions to dismiss on September 30, 1975. No evidentiary hearing was held. There was no notice that the motion to dismiss would be converted into a summary judgment, and consequently, there were no material affidavits presented. In fact, there were no affidavits considered in granting summary judgment. It is these omissions with which

we must find fault and accordingly reverse. We express no view as to the final result.

Disposition of appellants' action was rendered ultimately on the trial court's interpretation of the AFL–CIO Constitution. In its order of September 29, 1975, the court cites various provisions of the Constitution upon which it relies after stating: "Plaintiff LIU and defendant AFSCME are both affiliates of the AFL–CIO, and as such are bound to 'conform to its constitution and the rules and regulations adopted thereunder.' AFL–CIO Constitution, Article I."

The trial court quotes the Article XX procedure for handling internal labor disputes, refers to the city ordinance regarding recognition and checkoff, and recites findings made by the labor union umpire. The court found that the action before it was in disregard of Section 20, Article XX, which forbids court action after exclusive determination by the umpire: "This court finds that LIU is barred from coming into this court to relitigate precisely those matters determined by the umpire under the AFL–CIO internal disputes plan." Regarding those issues the umpire may have not covered, the court said: "LIU must seek 'settlement and determination' thereof in accordance with the procedures set forth in Article XX."

In dismissing the action, the court stated: "Having so concluded [that AFSCME was properly recognized by the City in accord with its ordinance], it becomes apparent to the court that the complaint does not state a cause of action against the city-related defendants, notwithstanding the cosmetic civil rights face worn by the complaint." The court continued: "This court is not inclined to give effect to such a circumvention of an otherwise final and binding decision of the impartial umpire [analogizing *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842]."

We cannot affirm the lower court's disposition since its consideration of the case included matters outside of the pleadings,

thus affecting an automatic conversion from a Rule 12(b)(6) motion into a Rule 56 motion. Without any indication that the mandatory requirements of Rule 56 were fulfilled, the judgment likewise falls outside the parameters of the Federal Rules of Civil Procedure as an abuse of discretion and, therefore, it is without effect.

The record contains four affidavits. Two were relative to the motion by LIU for a temporary restraining order and they primarily laid the basis for the conspiracy allegations. The City filed an affidavit concerning administrative cost and inconvenience in complying with discovery sought by appellants. Lastly, appellee AFSCME filed an affidavit with its own motion for protective order in which, while mention was made of the pendency of Rule 12(b) motions, its content was confined to the issue of harassment. We cannot let tangential reference shore up a disposition on the merits where determinative evidence is not properly before the court, and when the parties are not apprised by adequate notice that the entire matter will indeed be adjudicated.

■■■ Attachment A to AFSCME's motion to dismiss, the photocopy of the AFL–CIO Constitution, in no respect satisfies the Rule 56(e) requirement that such papers be made on personal knowledge, sworn, certified, and show affirmatively competence to offer evidence. We have no indication whatsoever that the photocopy represents a true copy of a document that was in full force and effect during the disputed events, that was jurisdictional over both parties as co-affiliates, and that absolutely bound them. The same criticisms apply to Attachment B, the umpire's finding. In short, while attachments may suffice for an affirmative defense, they are not adequate for summary disposition upon a Rule 12(b)(6) motion. There being no other testimony relative to union settlement of internal disputes, there is no evidence that would be admissible at trial and thus can likewise qualify as a basis for summary

judgment. *See, Green v. Benson*, 271 F.Supp. 90, 96 (E.D.Pa.1967).

Two district court cases illustrate the problem. In *Douglas v. Beneficial Finance Co. of Anchorage*, 334 F.Supp. 1166 (D. Alaska 1971), there was an attempt to summarily dispose of a class action alleging defendant loan companies failed to disclose a confession of judgment proviso in its standard note, one customarily used for loans. The trial court wrote:

> "Exhibit 5 purports to be an 'operating manual' for the 'Beneficial Finance System.' With the exception of a 1967 cover letter from one C. M. Benadom, no foundation is laid for the admission of the document. There is nothing to indicate that the manual is current, or that it was in use during the time of the alleged violations of the Act. Under these circumstances the manual would not be admissible at trial and therefore may not be used to support a motion for summary judgment. . . ." 334 F.Supp. at 1169.

Furthermore, the document to which the attachment was made was not given under oath, and even had it been an affidavit rather than a motion, this alone would not cure its natural status of inadmissibility. *See, Green v. Benson*, 271 F.Supp. 90, 96 (E.D.Pa.1967). Since there was no admission by stipulation of this documentary evidence, a procedure we affirmed for summary judgment purposes in *Locals No. 1470, No. 1469 and No. 1512 of Internatl. Longshoremen's Ass'n. v. Southern Pac. Co.*, 131 F.2d 605 (5 Cir. 1942), the trial court exceeded its ambit of consideration by going "beyond the disclosures of the bill of complaint to the crucial point of law upon which the controversy turned." *Ibid.*, at 605.

Where there has been a motion for disposition under Rule 56, we have upheld summary judgment where material introduced pursuant to that motion was uncertified, or otherwise inadmissible, and yet unchallenged. In *Auto Drive-Away Co. of Hia-*

*leah, Inc. v. ICC*, 360 F.2d 446 (5 Cir. 1966), defendant's objections on appeal to documentary evidence submitted in support of a motion for summary judgment were overruled. Also, we have ruled: "[W]e do not hold that it would have been improper for the court to construe the language of the policy, merely because it does not appear that a sworn or certified copy of the policy was ever served with the motion or attached thereto, according to Rule 56(e), since, like other rules of evidence this lack could be waived * * *." *Lawson v. American Motorists Ins. Co.*, 217 F.2d 724, 726 (5th Cir. 1954). *See*, Wright & Miller, 10 *Federal Practice & Procedure*, Civil Section 2722.

However, we distinguish these cases since they originated on Rule 56 motions, not ones under Rule 12(b)(6). Also, even if the contested papers in *Auto Drive-Away* and *Lawson, supra*, had been omitted entirely, there was still sufficient evidence in the record to support the summary judgment. In *Lawson, supra*, at p. 726, n. 3, it is said: "Moore says the requirement [under Rule 56(e)] of attaching sworn copies applies to 'material documents.' 6 Moore, *Federal Procedure* 2334. We think it applies not even to all material documents, but only documents the contents of which are materially in issue, at least when no objection to the use of such documents in connection with the motion has been made." While it is apparently not in dispute, the AFL–CIO Constitution is materially in issue. Also, the photocopy of it was not submitted with a Rule 56 motion, but with a Rule 12(b) motion, and consequently, the above language does not apply here.

While certain allowances as discussed above have been made regarding certification of documents submitted with a Rule 56 motion, we find none where summary judgment has occurred after a Rule 12(b) motion and we suspect, for good reason. We cannot extend these allowances to the instance of an initial Rule 12(b)(6) motion because of the possibility of inadequate notice to all parties that their case may not only turn, but be disposed of, on the basis of such unauthenticated attachment. More importantly, we cannot allow a judgment below to rest on a document which may be erroneous or inapplicable in some aspect, unknown to the trial judge.

The 1946 amendment to Rule 12(b) provides:

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Moore's instructs: "It will also be observed that if a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment . . . For the requirements of Rule 56, see Ch. 56, *infra*." *Moore's Federal Practice*, Vol. 2A, ¶ 12.-09[3], n. 25, at 2302. Also, Rule 56(c) was amended in 1946 so as to fix a ten-day period from the offering of the motion to the hearing of the motion, while affidavits might be made and offered in the interim. We find nothing in the record of the instant case to indicate that a hearing was ever held, or that appellants were aware that disposition on the merits might be forthcoming.

In *Enochs v. Sisson*, 301 F.2d 125 (5 Cir. 1962), we held it an abuse of discretion to grant a summary judgment without proper notice and hearing as required by Rule 56. We have previously cited with approval the rule in at least two other circuits that the spirit of Rule 56 requires the same notice and hearing where the court contemplates

summary dismissal on its own motion. *See, Bowdidge v. Lehman*, 252 F.2d 366 (6 Cir. 1958), and *Ullah v. Hoy*, 278 F.2d 194 (9 Cir. 1960). We have held that "the notice requirements of Rule 12 guarantee that the automatic change of a motion to dismiss into a motion for summary judgment will not be accomplished by an unforeseeable thrust with no chance to parry." *Georgia Southern & F. Ry. Co. v. Atlantic Coast Line R. Co.*, 373 F.2d 493 (5 Cir. 1967). In *Georgia Southern*, the trial court imprudently granted a Rule 12(b) motion that was filed the morning of a hearing on a motion for preliminary injunction without a later hearing.

The question presented is not novel in this circuit. In *Gutierrez v. El Paso Community Action Program*, 462 F.2d 121 (5 Cir. 1972), where the district judge considered affidavits from both sides in ruling on a 12(b)(6) motion, the court cited *Georgia Southern & F. Ry. Co. v. Atlantic Coast Line R. Co., supra*, and said:

> [B]ut the 10-day notice that it would be treated as a motion for summary judgment and the opportunity to furnish additional material were not given. The case could not be decided in this way at this stage.

To the same effect we find *Scott v. Courtesy Inns, Inc.*, 472 F.2d 563 (5 Cir. 1973), and *Harrison v. Thompson*, 447 F.2d 459 (5 Cir. 1971), the latter case applying to a Rule 12(c) motion.

In *Tuley v. Heyd*, 482 F.2d 590 (5 Cir. 1973), this court expressed itself in similar fashion by stating that, under a 12(b)(6) motion, the facts may become clear where there is a stipulation, or the moving party files an affidavit setting forth certain facts and the non-moving party is unable to produce any controverting affidavit or evidence, and then follows:

> When a district court grants a motion styled a motion to dismiss, but bases its ruling on facts developed outside the pleadings, the appellate court will review the "dismissal" as a summary judgment

under the standards laid down in Fed.R. Civ.P. 56 (citations omitted).

*Kibort v. Hampton*, 538 F.2d 90 (5 Cir. 1976), stands for the proposition that Rule 56(c) does not necessarily call for an oral "hearing" after the ten-day period has expired, but either a ten-day notice must be given, a hearing scheduled, or briefs filed. In the present case briefs were filed and the parties referred to the union constitution and umpire's decision as genuine copies, but no mention was made that the 12(b)(6) motion was to be treated by the court as a motion under Rule 56. We are not advised as to any local rule requiring opposing affidavits to be filed in a 12(b)(6) motion. See also, *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 863 (5 Cir. 1970).

We do not hold that a notice to convert a 12(b)(6) motion into a summary judgment must be by written order, but the record must adequately demonstrate that all counsel were aware of the intentions of the district judge to treat the motion as converted, together with a reasonable opportunity afforded to the non-moving party to present, by way of affidavit or otherwise, anything necessary to rebut the contention of the moving party. This does not appear in the instant case, although the district judge may have verbally advised counsel to this effect, all of which is not revealed in the record.

Today we hold that where matters outside the pleadings are considered in disposition of a Rule 12(b)(6) motion, so as to automatically convert it to one for summary judgment pursuant to Rule 56, or as one made *sua sponte*, the Rule 56 strictures of notice, hearing and admissibility into evidence are strictly required. As Judge Goldberg aptly observed of the notice requirement in *Soley v. Star & Herald Co.*, 390 F.2d 364, 369–70 (5 Cir. 1968): "They [the litigants] cannot read over the judge's shoulder, or penetrate his memory. Nor can we. From Shakespeare's *Hamlet* to Albee's *Tiny Alice*, soliloquies and asides have been shared with the audience." Where there is a motion to dismiss for

failure to state a claim upon which relief may be granted, there can never be a wide overview by the trial court, beyond the pleadings to include matters outside, without affording all litigants the opportunity to offer their perspectives on the additional matter by way of admissible evidence.

The bridling devices at issue here sustain and insure the most elementary operation of our civil law. The concepts of notice, admissibility, and opportunity to be heard are ancient primaries. Independent from these notions in advocacy, there is the trial court's duty to insure that its basis for judgment is without error. This duty of the trial court distinguishes the margin of allowances we have held in the instance of an original Rule 56 motion from summary disposition following a Rule 12(b)(6) motion. While we can allow departure from literal compliance with Rule 56(e) in the situation of *Auto Drive-Away* and *Lawson, supra,* we hold compliance as mandatory for a Rule 12(b)(6) disposition. However correct the conclusion below may be in the end, we cannot allow the shaving of principles for expediency when those precepts assure order and justice.

■ Accordingly, the judgment below is VACATED, and the cause is REMANDED for further proceedings [4] not inconsistent with this opinion.

JUDGMENT VACATED AND REMANDED.

4. A corporate city is not a "person" for purposes of an action pursuant to 42 U.S.C. §§ 1983, 1985. On remand, the status of the City of Atlanta may be considered.