**NEWMAN OIL COMPANY, Advance Petroleum Distributing Company, Inc., B & H Oil Company, Chambles Oil Company, D & S Service Company, Inc., Econ-O-Gas, Inc., Fuel Distributors, Inc., Gabbert Oil Company, Gooding Oil, Inc., Crain Oil Co., Havard Oil Company, Inc., Henderson Oil & Butane Co., Hinson Oil Co., Inc., Hunt County Oil Co., Inc., Ben Ivey Oil Company, Newcomer Butane & Oil Co., Martin Oil Company, R. L. More & Son, Oates Oil Co., Permian Oil & Tire Co., Inc., W. C. Rinks Oil Co., Rodgers Oil Company, Ray Schlichting Oil Co., Service Oil Co., Tandem Oil Co., Ralph Watson Oil Co., Inc., Marsh Oil Co., Inc., Lamberth Oil Co., Hornet Distributing Co., Bosse Oil Co., Stapp Oil Co., HRNCIR Oil Co., Whitten Oil Co., Inc., Mason Oil Company, W. D. (Bill) Young Oil & Supply, J. G. Moore Oil Co., Neal's Oil & Butane, Inc. and Kelso Oil Company, Plaintiffs-Appellants,**

v.

**ATLANTIC RICHFIELD COMPANY, Albert B. Alkek and Foremost Petroleum Corporation, Inc., Defendants-Appellees.**

No. 5–32.

Temporary Emergency Court of Appeals.

Argued Dec. 15, 1978.

Decided April 20, 1979.

Rehearing Denied May 25, 1979.

ion labor is an issue which this court need not resolve.

John Feather, Johnston & Feather, P. C., Dallas, Tex. (John C. Gabbert, Dallas, Tex., on brief), for plaintiffs-appellants.

Thomas R. McDade, Fulbright & Jaworski, Houston, Tex. (Alton F. Curry, Steven E. Segal, Louis S. Zimmerman, and David L. Tolin, Houston, Tex., of the same firm on brief), for defendants-appellees, Albert B. Alkek and Foremost Petroleum Corp., Inc.

Gregory S. C. Huffman, Thompson & Knight, Dallas, Tex. (Jerry L. Buchmeyer and David R. McAtee, Dallas, Tex., of the same firm on brief and William John Rathje, Los Angeles, California, of counsel), for defendant-appellee, Atlantic Richfield Co.

Before HOFFMAN, INGRAHAM and GEWIN, Judges.

HOFFMAN, Judge.

■ Appellants, a large number of local distributors of petroleum products, brought suit against appellees alleging violations of the antitrust laws of the United States and Texas, the Emergency Petroleum Allocation Act of 1973 (the EPAA), the Clayton Act as amended, and common law breach of contract and false representation. There is no diversity of citizenship involved. Appellees filed motions to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court elected to interpret the motions to dismiss as motions for summary judgment, and dismissed with prejudice all of appellants' federal claims without any discovery proceedings. However, the court gave no notice to the parties that the motions were to be disposed of under Rule 56, and no opportunity was provided to file affidavits or other materials pertinent to appellants' claims. We are, therefore, compelled to reverse and remand for further proceedings.

The Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751, et seq. (1976), was enacted to alleviate the shortages of petroleum products brought on by the Arab oil embargo. Distributors were required to return to the supplier who had supplied them in the 1972 base period, and were thereafter allocated the available product on monthly basis in direct proportion to the ratio of the amount of petroleum products they had received from the supplier in the 1972 base period as compared to the total output of that refiner in the corresponding period of each year thereafter. Cost increases in refining the product are added to the base prices, primarily on a dollar-for-dollar basis. Provision is made for changing or substituting suppliers, pursuant to regulations of the Federal Energy Administration.[1]

The Atlantic Richfield Company (ARCO) was appellants' 1972 base period supplier. In late 1976 or early 1977 ARCO sold its Texas pipeline terminals to the Foremost Petroleum Corporation (Foremost) at which time ARCO, Foremost and each of the appellants executed three-party agreements on standard FEA forms which petitioned the agency to terminate ARCO's obligations as base period supplier and to assign the appellants' base period entitlements to Foremost. The three-party agreements were submitted to the agency for approval, and the FEA subsequently entered orders based on the agreements. The agreements make no mention of price, but refer only to volume. Appellants allege in the fourth count of their complaint that Albert B. Alkek, who exercised full authority over the day-to-day petroleum sales and distribution operations of Foremost, "falsely promised that each of the Plaintiffs would have the same price and other terms for the purchase of motor gasoline and diesel fuel as they had with ARCO (the base period supplier) and in effect would enjoy the same business practices as prevailed with ARCO during the base period subject to the legitimate adjustments available to ARCO." Appellants allege that within weeks thereafter Foremost "willfully and maliciously" instituted unilateral discriminatory and retaliatory price increases with intent to injure the appellants and remove them from competition with Foremost. In addition to price increases, appellants allege that Foremost willfully imposed discriminatory supply terminal requirements, withheld established freight allowances, and restricted credit terms, all contrary to normal business practices. The sixth count of the complaint sought recovery of damages against Foremost for breach of contract, against Alkek for inducing such breach of contract, and against both Foremost and Alkek for false and fraudulent promises and representations.

■ The fourth count alleges that "the Defendants [including ARCO] have undertaken a willful course based upon false and fraudulent promises to knowingly and drastically vary the base period supplier-pur-

---

1. FEA became a part of the Department of Energy on October 1, 1977, 42 U.S.C. § 7151(a); Executive Order No. 12009, 42 Fed.Reg. 46267 (September 15, 1977). This opinion will refer generally to the FEA, as did the order of the district court.

chaser relationships had by the Plaintiffs and other members of the Class." This allegation of fraud, while thin as to ARCO, is sufficient to withstand a Rule 12(b)(6) motion.

On December 15, 1977, the district court held a hearing on the appellees' motions to dismiss. No court reporter was present. The opinion of the district court indicates that, at the time of the hearing, counsel for both sides were in apparent agreement that the key issue in the case was whether or not Foremost was required to supply the appellants with motor fuel at ARCO's base price, and that the antitrust allegations made in appellants' complaint derived in their entirety from the alleged violations of the EPAA and the regulations promulgated thereto. Counsel for appellants stated at oral argument that the district court had indicated it would rule on the motion to dismiss within a week or ten days, and that the court at no time intimated that it intended to consider the motions under Rule 56. This statement is not contradicted. Eight months later the court entered the order granting summary judgment for the appellees.

 The 1946 amendment to Rule 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Moore's instructs: "It will also be observed that if a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment." Advisory Com-

mittee Note of 1946 to Amended Subdivision 12(b), *Moore's Federal Practice*, Vol. 2A, ¶ 12.09[3] n. 25, at 2302. *See also* Wright and Miller, *Federal Practice and Procedure*, Vol. 5, § 1366, at 683. Rule 56(c) requires a ten-day period from the offering of the motion to the hearing of the motion, during which affidavits may be made and offered. Courts have required strict adherence to this notice requirement when a Rule 12(b)(6) motion is converted into a Rule 56 motion. *Davis v. Howard*, 561 F.2d 565, 571 (5th Cir. 1977); *Winfrey v. Brewer*, 570 F.2d 761, 764 (8th Cir. 1978); *Plante v. Shivar*, 540 F.2d 1233, 1235 (4th Cir. 1976). It is not necessary that the notice of the conversion of the 12(b)(6) motion to one for summary judgment be made by written order; however, the record must demonstrate that all counsel were aware of the intentions of the district judge to treat the motion as converted, together with a reasonable opportunity to the non-moving party to rebut the converted motion. Since there is nothing in the record to indicate that the requisite notice was given, we find it necessary to reverse and remand to the district court. We express no view as to the final result in this case or whether, after further proceedings, a motion for summary judgment is in order.

 A substantial question has been raised on appeal as to the jurisdiction of the federal court over claims involving common-law fraud. In essence appellants' theories of recovery center on their contention that they executed the three-party agreements as a result of assurances received from Alkek that prices and terms when dealing with Foremost would be "at least as good as those supplied by ARCO."[2] From this beginning point appellants sought to establish either that the three-party agreements are broad enough to include an agreement on price, or that pertinent FEA regulations establish price because of the nature of Foremost's acquisition of ARCO's terminals. Alternatively, appellants alleged that the assurances they received

---

2. Statement of counsel at oral argument on appeal.

were fraudulent and constituted a willful attempt to circumvent the petroleum allocation act and regulations. Appellees argue that allegations of fraud are state law claims not cognizable in federal court under the jurisdictional prerequisites of the Economic Stabilization Act (ESA).

The EPAA, at 15 U.S.C. § 754(a)(1), adopted the provision for damages or other relief of the ESA, 12 U.S.C. § 1904 note (1969 Supp.).[3] This court has broadly interpreted § 210(a) of the ESA to allow the recovery of any damages arising from any legal wrong, and has interpreted § 210(b) as creating a special remedy for overcharges rather than a limit on damages available under § 210(a). *Griffin v. United States*, 537 F.2d 1130, 1135–36 (Em.App.1976); *cf. Arnson v. General Motors Corporation*, 377 F.Supp. 209, 212 (N.D.Ohio 1974). There is case law, from a context closely analogous to the case at bar, that if a cause of action arises from fraud and deceit, it is a common-law action of which a federal court has no jurisdiction unless there is diversity of citizenship. *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 250, 71 S.Ct. 692, 95 L.Ed. 912 (1951).[4] Jurisdiction in that case, however, was derived from 28 U.S.C. §§ 1331 and 1337 as a civil action arising under an act of Congress regulating commerce. Jurisdic-

tion in the present case is granted under § 210(a) of the ESA for "[A]ny person suffering legal wrong because of any act or practice arising out of this title . . . ." We interpret this language as being sufficiently broad to encompass a cause of action arising from a fraudulent representation intended to induce one to forego his rights under the EPAA.

It is the failure of the court to give notice of the conversion of the motion that principally necessitates the remanding of this case for further proceedings. We find no error in the manner in which the court construed the termination agreements on their face. The agreements make no mention of price, and the FEA has ruled that a purchaser who enters into a termination agreement, requesting and receiving FEA approval of the termination, thereby becomes a new wholesale purchaser under the express language of 10 C.F.R. § 211.12(e). Interpretation 1977–28, 42 Fed.Reg. 46271, Sept. 15, 1977 (Mobil Oil Corporation). While we believe that appellants sufficiently stated their allegations of fraud and willfulness in the fourth and sixth counts of their amended complaint, we appreciate the opinion of the district court that price is the key issue, since it would appear that appellants' allegations of fraud were at all times

---

3. § 210. Suits for damages or other relief.

(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulations issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211) and/or damages.

(b) In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:

(1) an amount not more than three times the amount of the overcharges upon which the action is based, or

(2) not less than $100 or more than $1000;

. . . ..

4. This case involved two public electric utilities companies who were at one time under the same management through interlocking directorships and joint officers. During that relationship the two companies interchanged electric energy, shared expenses, and made a number of intercompany contracts establishing rates and charges, which contracts were filed with and accepted by the Federal Power Commission. The plaintiff company alleged that the interlocking directorships resulted in a constructive fraud, in that it paid unreasonably high prices for what it received, and unreasonably low rates for what it provided. The Court in effect held that it was the exclusive power of the Commission to establish reasonable rates, and that the Federal Power Act added nothing to the pre-existing common-law right nc . to be defrauded into paying an excessive or unreasonable rate. Mr. Justice Frankfurter dissented, joined by three other justices.

secondary to their attempt to establish price under the pertinent regulations.[5] Nevertheless, "[T]he concepts of notice, admissibility, and opportunity to be heard are ancient primaries. . . . However correct the conclusion below may be in the end, we cannot allow the shaving of principles for expediency when those precepts assure or-

der and justice." *Davis v. Howard, supra,* at 572.

## VACATED AND REMANDED.

---

5. Econ-O-Gas, Inc., an appellant herein, submitted an application for exception and petition for special redress to the Department of Energy, seeking relief from the three-party agreement it had signed with ARCO and Foremost. In denying relief, the DOE stated that Econ-O-Gas had not alleged that it was coerced in entering into the three-party agreement, and added that it was not the FEA's responsibility to make certain that Econ-O-Gas had read and understood the pricing regulations which would govern its relationship with Foremost or that the firm had reached a contractual relationship which it would find satisfactory from a business standpoint. Apparently fraud was not alleged before the DOE. See *Econ-O-Gas, Inc.,* Case Nos. DEE–1416, DSG–0031, 2 DOE ¶ —— (February 12, 1979).