**In re LASER ARMS CORPORATION SECURITIES LITIGATION.**

**No. 86 Civ. 3591 (JMC).**

United States District Court,
S.D. New York.

Nov. 3, 1989.

Wolf Haldenstein Adler Freeman & Herz, Pomerantz Levy Haudek Block & Grossman, New York City, Charles Piven, Baltimore, Md., Berman DeValerio & Pease, Boston, Mass., Lowey, Dannenberg, Bemporad Brachtl & Selinger, P.C., Sirota & Sirota, Stull Stull & Brody, New York City, Morris & Rosenthal, P.A., Wilmington, Del., Law Office of Joseph Weiss, New York City, for plaintiffs.

Karp and Sommers, New York City, for Edward A. Viner & Co., Inc.

Bear Marks & Upham, New York City, for Greentree Securities Corp.

Oppenheimer Wolff & Donnelly, New York City, for Dillon Securities, Inc.

Scheffler, Karlinsky & Stein, New York City, for Teichberg Loeb Waxman & Rabinowitz.

Schreiber & McBride, New York City, for Hill Thompson, Magid & Co.

Law Offices of J. Jerome Olitt, New York City, for Philips, Appel & Walden, Inc.

Rein Mound & Cotton, New York City, for Mikal & Co., Inc.

Gusrae, Kaplan & Bruno, Law Offices of Ronald Kahn, New York City, Law Offices of Bucholtz, Bull & Ewing, P.C., Denver, Colo., for S.W. Devanney Co.

Ormsten & Evangelist, New York City, for Investors Center.

Robinson, Wayne, Levin, Riccio & Lasala, Newark, N.J., Tolins & Lownfels, New York City, for First Jersey Securities, Inc.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Defendants' motions to dismiss the Consolidated Class Action Complaint ["Complaint"] are granted in part and denied in part. Fed.R.Civ.P. 9(b), 12(b)(6). Defendant Wien Securities' motion for summary judgment is moot. Plaintiffs' motion for class and subclass certification is granted in part and denied in part. Fed.R.Civ.P. 23. All motions to withdraw as counsel of record are granted. Local Rules S.D.N.Y., General Rule 3(c).

## BACKGROUND

This action stems from the Court's Order dated August 11, 1986, consolidating all similar actions pending in the Southern District of New York involving the fraudulent scheme to distribute unregistered shares of the Laser Arms Corporation ["Laser Arms"].[1]

### A. *The Fraudulent Scheme*

Plaintiffs name three distinct groups of defendants who participated in the fraudulent scheme to distribute unregistered securities of Laser Arms—the "Laser Arms defendants," the "Broker–Dealer defendants," and the "Market Maker defendants." The Laser Arms defendants refers to Marshall Zolop, Philip Bernick, John Judge, and others who generally assisted Zolop, the alleged mastermind of the scheme. Complaint, at ¶ 11. The Broker–Dealer defendants refers to all other defendants, who broadly constitute the various broker-dealers that purchased Laser Arms stock from the Laser Arms defendants. *Id.* at ¶ 12. The Market Maker defendants, a sub-set of the seventeen Broker–Dealer defendants, listed themselves on the National Quotations Bureau ["NQB"] pink sheets as market makers for Laser Arms stock. *Id.*

The Complaint alleges that Zolop and the other Laser Arms defendants "formed a conspiracy, plan and scheme to distribute into the marketplace unregistered and fraudulent stock certificates of a fictitious company, Laser Arms Corporation." *Id.* at ¶ 5. The scheme was implemented in December 1985, when the Laser Arms defendants submitted a fraudulent application to the NQB for the initial publication of quotations for Laser Arms common stock in the NQB pink sheets. *Id.* at ¶ 21. The NQB application contained allegedly fictitious documents which were intended to constitute the "Due Diligence Memorandum." *Id.* These documents falsely represented the date of Laser Arms' incorporation; its merger with Diversified Medical

Corporation; its issuance of additional stock following incorporation of the merger bringing the total outstanding shares to over 18.2 million; the description of its business; the identity of its officers and directors; and its balance sheets as of September 30, 1985 and December 15, 1985, which were accompanied by a favorable opinion letter from John Ritter, who was represented to be a Certified Public Accountant. *Id.* at ¶¶ 21–23.

To facilitate the listing of quotes for Laser Arms stock in the NQB pink sheets, the NQB application was signed on behalf of Broker–Dealer defendant S.W. DeVanney & Co. ["DeVanney"] by Bernick, who was allegedly a registered representative and employee of DeVanney acting within the scope of his employment. *Id.* at ¶ 40. Bernick personally profited from the fraud through a nominee account designed to hide his beneficial interest in the profits of the fraud. *Id.*

Submission of the NQB application permitted Laser Arms common stock to be traded in the over-the-counter market. From approximately January 7, 1986 through at least April 18, 1986, over 900,-000 unregistered shares of Laser Arms common stock were distributed into the marketplace by the Laser Arms defendants through accounts established at various brokerage firms. *Id.* The illegal stock certificates were printed by the Laser Arms defendants and delivered to the brokerage firms for sale. *Id.* The Laser Arms stock subsequently was sold to other brokerage firms who acted as market makers for the stock. *Id.*

Upon approval of the NQB application, Laser Arms common stock was listed in the pink sheets, "thereby creating a public market for the stock." *Id.* at ¶ 24. Once the stock was publicly listed, the Laser Arms defendants embarked upon a fraudulent scheme to raise the price of Laser Arms stock and to generate investor confidence. *Id.* at ¶ 25. Pursuant to the fraud-

---

**1.** The five consolidated actions are *Vavra, et al. v. Laser Arms Corp., et al.,* 86 Civ. 3591; *Peltz v. Laser Arms Corp., et al.,* 86 Civ. 3945; *Fundamental Resources, Ltd. v. Teichberg, Loeb, Wax-* man & Rabinowitz, Inc., 86 Civ. 3631; *Pacific, et al. v. Laser Arms Corp. & Zolop,* 86 Civ. 4175; *Buxbaum v. Laser Arms Corp., et al.,* 86 Civ. 4105.

ulent scheme, the Laser Arms defendants disseminated false press releases and advertisements about the financial condition of Laser Arms and the development of a new fictitious product. *See id.* at ¶¶ 25–35. As a result of this fraudulent scheme, the price of Laser Arms stock climbed in the pink sheets from a $.05 bid and $.15 ask price on January 1, 1986, to $3.50 a share in mid-April 1986. *Id.* at ¶ 35.

On April 21, 1986, the Securities and Exchange Commission suspended trading in Laser Arms securities and on April 30 secured an order freezing the assets of Laser Arms and Zolop. *Id.* at ¶ 52. In September 1986, a grand jury returned a five count indictment against Zolop and the other Laser Arms defendants charging them with criminal violations of the federal securities laws. *Id.* at 57.

### B. *Role of the Moving Defendants*

Zolop sold Laser Arms securities through accounts established at Broker–Dealer defendants E.F. Hutton & Co. ["Hutton"] and Fitzgerald, Talmin, Inc. ["Fitzgerald"]. Hutton solicited buyers for the Laser Arms stock on behalf of Zolop and sold 115,000 shares between February 25 and March 7, 1986. *Id.* at ¶ 42(b). Zolop sold additional Laser Arms securities through an account established at Fitzgerald under the direction of Laser Arms defendant Bernick, who was an employee of Fitzgerald. *Id.* at ¶ 43(c).

The Market Maker defendants moving to dismiss—Greentree Securities Corp. ["Greentree"], Wien Securities, Inc. ["Wien"], Mikal & Company ["Mikal"],[2] First Jersey Securities, Inc. ["First Jersey"], Investors Center, Inc. ["Investors Center"], and Hill, Thompson, Magid & Co. ["Hill Thompson"]—held themselves out as market specialists for the buying and selling of Laser Arms stock. *Id.* at ¶ 46. Each Market Maker defendant purchased its Laser Arms stock from accounts the

Laser Arms defendants established either at their own firms or with other Broker–Dealer defendants. *Id.* All sales to the public were allegedly made from the inventory of the Market Maker defendants. *Id.* at 47. However, the Complaint only alleges specific purchases by plaintiffs from Market Maker defendants Greentree, First Jersey, and Investors Center. *See id.* at ¶ 13(b), (e), (*o*), (p), (q), (r). Aside from these specific allegations, plaintiffs broadly allege that "all other named Broker–Dealers participated in the initial distribution of Laser Arms stock by purchasing stock as principals in their capacity as market makers from the foregoing accounts established by the Laser Arms defendants." *Id.* at 44. By virtue of these activities, plaintiffs allege that the Broker–Dealer defendants, including those who were market makers, acted as "underwriters" in the distribution of Laser Arms securities within the meaning of section 2(11) of the Securities Act of 1933. *Id.* at ¶ 45.

Counts I through III assert claims against all defendants under section 12(1) and 12(2) of the Securities Act of 1933. Counts IV and V assert claims against all defendants under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Count VI asserts a claim against the Laser Arms defendants and various other defendants under section 1962 of the Racketeer Influenced and Corrupt Organizations Act. Count VII asserts a claim against all defendants for common law negligent misrepresentation. Lastly, Counts VIII and IX assert claims against the Laser Arms defendants for common law conversion and common law fraud, respectively.

Of the defendants who move to dismiss the instant action pursuant to Rule 9(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Greentree, Wien, Mikal, First Jersey, Investors Center, and Hill Thompson are Market Maker defendants, while

---

**2.** Plaintiffs initially contend that Mikal's motion to dismiss pursuant to Rule 12(b)(6) is procedurally defective since it was made after Mikal had answered and more than two months after the date set by Court Order for the filing of motions directed to the pleadings. After careful consideration, the Court finds Mikal's motion to be timely. However, since the pleadings are closed, the Court will treat Mikal's motion as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Hutton and Fitzgerald are the only moving Broker–Dealer defendants.[3] Alternatively, Wien moves for summary judgment. None of the Laser Arms defendants move to dismiss the instant action. In addition, plaintiffs move to certify a class and numerous subclasses pursuant to Rule 23 of the Federal Rules of Civil Procedure. Lastly, Baer, Marks & Upham moves to withdraw as counsel for Market Maker defendant Greentree, Ronald S. Kahn moves to withdraw as local counsel for Market Maker defendant DeVanney, and Lysaght, Lysaght & Kramer, P.C., moves to withdraw as counsel for Laser Arms defendant Judge.

## DISCUSSION

## MOTIONS TO DISMISS

### I. COUNTS I & II

Count I asserts a claim against the Laser Arms defendants and the Market Maker defendants under section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(1) (1982) [the "1933 Act"]. Count II asserts a claim against all defendants under section 12(1) of the 1933 Act as primary wrongdoers and as aiders and abettors to the Laser Arm defendants' scheme to illegally distribute unregistered Laser Arms stock. Count II overlaps with Count I insofar as both counts are asserted against the Laser Arm defendants and the Market Maker defendants under section 12(1). However, Count II is pled against all Broker–Dealer defendants, not simply those who acted as market makers. Additionally, Count II, unlike Count I, asserts that the defendants are primarily and secondarily liable under section 12(1) in their capacity as statutory underwriters. *Id.* at ¶¶ 70, 71. Lastly, Count II asserts that Broker–Dealer defendant Fitzgerald is further liable under the doctrine of respondeat superior for its employees' knowing participation in the Laser Arms conspiracy. *Id.* at ¶ 72. Each of the Market Maker defendants and Broker–Dealer defendants moves to dismiss Counts I and II on the grounds that: (a) plaintiffs

fail to allege the requisite privity under section 12(1), (b) the transactions were exempt from liability under section 4 of the 1933 Act, and (c) the defendants did not act as statutory underwriters.

### A. *Primary Liability under Section 12(1)*

#### 1. Privity Requirement

The 1933 Act was intended "to provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). Section 12(1) provides that any person who "offers or sells a security in violation of section 77e of this title [Section 5 of the 1933 Act] ... shall be liable to *the person purchasing such security from him*, who may sue either at law or in equity in any court of competent jurisdiction...." 15 U.S.C. § 77*l*(1) (1982) (emphasis added). Section 5, as it relates to the instant action, provides that it is unlawful to sell a security for which a registration statement has not been filed. *Id.* § 77e.

To state a claim under section 12(1), a plaintiff must establish: (1) the sale or offer to sell securities by the defendant; (2) the absence of a registration statement; and (3) the use of the mails or the facilities of interstate commerce in connection with the sale or offer. *Lewis v. Walston & Co.*, 487 F.2d 617, 621 (5th Cir.1973); *Wolf v. Banco Nacional de Mexico*, 549 F.Supp. 841, 853 (N.D.Cal.1982). Since liability for the sale of unregistered securities is absolute under section 12(1), "[a] purchaser may recover regardless of whether he can show any degree of fault, negligent or intentional, on the seller's part." *Lewis*, 487 F.2d at 621. However, the plaintiff must satisfy what has been termed by one leading commentator as the "built-in privity requirement" of section 12(1). *See* L. Loss, *The Fundamentals of Securities Regula-*

---

**3.** All references by the Court to the Broker–Dealer defendants or the Market Maker defen-

dants are intended to encompass only the moving parties unless otherwise noted.

*tion* at 1017 n. 2 (1983). A purchaser of unregistered securities may bring an action against only his immediate seller. *See Unicorn Field, Inc. v. Cannon Group, Inc.*, 60 F.R.D. 217, 222 (S.D.N.Y.1973).

■ Plaintiffs allege that the Broker–Dealer defendants aided and abetted the Laser Arms defendants in distributing unregistered securities. However, aiding and abetting is not a sufficient substitute for the strict privity requirement of section 12(1). Although plaintiffs cite cases where the privity requirement of section 12(2) has been relaxed in light of an aiding and abetting allegation, *Katz v. Amos Treat & Co.*, 411 F.2d 1046 (2d Cir.1969) is the only case cited by plaintiffs that in any way suggests an expanded definition of the term "seller" under section 12(1). However, *Katz* has been limited to relaxing the strict privity requirement under section 12(1) only where the brokerage firm "actively solicits the plaintiff-purchaser's offer to buy." *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 275 (S.D.N.Y.1984).[4] In the instant action, the Complaint is devoid of any allegation that the Market Maker defendants or the Broker–Dealer defendants actively solicited plaintiffs' offers to buy Laser Arms securities.[5] Therefore, strict privity remains an essential element of the section 12(1) claim.

■ Plaintiffs allege that all Laser Arms securities reached the public through Market Makers and, therefore, each purchase by a class member was from a Market Maker defendant. Complaint, at ¶ 63. In an attempt to meet the privity requirement of section 12(1), plaintiffs assert that "Count I carefully employs subclasses to be clear that each class member is suing only the market maker from whom it purchased Laser Arms securities." Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss, at 19, 86 Civ. 3591 (JMC) (S.D.N.Y. Apr. 10, 1987)

["Plaintiffs' Mem."]. The mere use of subclasses, however, does not amount to an allegation of direct privity with all of the Market Maker defendants.

Plaintiffs allege three purchases from defendant Greentree, Complaint, at ¶ 13(b), (e), (*o*), three purchases from defendant Hill Thompson, *id.* at ¶ 13(g), (h), (i), two purchases from defendant First Jersey, *id.* at ¶ 13(q), (r), and one purchase from defendant Investors Center, *id.* at ¶ 13(p). Defendants argue that these allegations do not constitute allegations of direct privity since it is possible that the plaintiffs may have acted through brokers who in turn purchased the stock from the Market Maker defendants named above. However, when the Court reviews the sufficiency of a complaint, the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). The Court finds that since plaintiffs have alleged purchases from defendants Greentree, Hill Thompson, First Jersey, and Investors Center and *could* prove at trial that these were direct purchases, Count I is sufficient on the privity issue as to these four Market Maker defendants. However, Count I fails to allege any purchase by plaintiffs from Market Maker defendants Mikal and Wien, and, therefore, Count I fails to state a claim against these two Market Maker defendants. For the same reasons, Count II fails to state a claim against Broker–Dealer defendants Hutton and Fitzgerald.

### 2. Section 4 Statutory Exemptions

The Market Makers move to dismiss Count I on the ground that their transactions were exempt from section 12(1) liability pursuant to the dealer exemption in section 4(3)(A). The Broker–Dealers similarly move to dismiss Count II on the ground

---

**4.** *Katz* has been interpreted by the Second Circuit as evidence of a liberal definition of "seller" under section 12(2) of the 1933 Act. For a discussion of liability under section 12(2) absent strict contractual privity, see the discussion under Count III.

**5.** Although plaintiffs allege that Broker–Dealer defendant Hutton "solicited buyers" for Zolop's Laser Arms stock, Complaint, at ¶ 42(b), plaintiffs fail to specify that Hutton solicited the plaintiff-purchasers' offers to buy.

that their transactions were exempt from section 12(1) liability pursuant to the broker exemption in section 4(4). Plaintiffs contend that the statutory exemptions are not available because: (1) the transactions by the Market Makers occurred prior to the expiration of the forty day withholding period and (2) the Market Makers and Broker–Dealers were statutory underwriters.

### a. Dealer Exemptions

█ Section 4(3)(A) exempts from liability under section 12(1) for the sale of unregistered securities:

> (3) transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except—

> (A) transactions taking place prior to the expiration of forty days after the first date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter....

15 U.S.C. § 77d(3)(A) (1982). Thus, pursuant to section 4(3)(A), sales by a dealer more than forty days after a "bona fide" offering to the public are exempted from the scope of section 5, and, therefore, not subject to claims under section 12(1). Plaintiffs, however, contend that the forty day provision is inapplicable to the instant action because there never was a "bona fide" public offering of Laser Arms securities.

Plaintiffs assert that the forty day provision in section 4(3)(A) "cannot run until at least (a) the corporation whose stock is being sold has been formed, and (b) some minimally *bona fide* step has been taken to start a genuine public offering." Plaintiffs' Mem., at 27 (emphasis in original). The Court finds this theory unpersuasive. By its terms, section 4(3)(A) permits trading in unregistered securities in violation of section 5 upon expiration of the forty day

withholding period. *See* 15 U.S.C. § 77d(3)(A) (1982). Courts have determined the "bona fide" offering date of an unregistered security to be the date the security was first quoted by a dealer in the pink sheets, which is the date on which trading in the security commenced. *See, e.g., Kubik v. Goldfield,* 479 F.2d 472, 475 (3d Cir.1973); *Morse v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 619, 623 (S.D.N.Y.1977); *SEC v. North America Research & Dev. Corp.,* 280 F.Supp. 106, 125 (S.D.N.Y.1968), *aff'd in part, vacated in part,* 424 F.2d 63 (2d Cir.1970).

The common stock of Laser Arms was listed in the pink sheets "[b]y no later than January 1, 1986." Complaint, at ¶ 24. Thus, where plaintiffs have alleged transactions by the Market Makers more than forty days after January 1, 1986, the Complaint fails to allege sufficient facts to support a section 12(1) cause of action. Plaintiffs alleged purchases executed in April 1986 from defendants Greentree, Complaint, at ¶ 13(b), (e), (o), Hill Thompson, *id.* at ¶ 13(g), (h), (i), Investors Center, *id.* at ¶ 13(p), and First Jersey, *id.* at ¶ 13(q), (r). Since each of these transactions was more that forty days after the Laser Arms securities "bona fide" offering to the public, Greentree, Hill Thompson, Investors Center, and First Jersey were exempt from the registration requirements of section 5 and thus not subject to liability under section 12(1).[6]

█ Plaintiffs correctly assert that the section 4(3)(A) dealer exemption does not apply to statutory underwriters. However, plaintiffs fail to allege sufficient facts to establish that the Market Maker defendants acted as statutory underwriters. Section 2(11) defines a statutory underwriter as follows:

> The term "underwriter" means any person who has purchased from an issuer with a view to, or offers or sells for an

---

**6.** With respect to defendant Wien, the Complaint fails to allege the specific date that Wien dealt in Laser Arms securities. Although Wien has submitted the affidavit of Mr. Goldring limiting Wien's trading in Laser Arms securities from March 12 through March 27, 1986, the Court will only consider facts that appear on the

face of the complaint when presented with a motion to dismiss. Since it is possible that Wien dealt in Laser Arm securities within forty days of the "bona fide" offering on January 1, 1986, Wien's motion to dismiss Count I on the grounds of a statutory exemption is denied.

issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

15 U.S.C. § 77b(11) (1982). An issuer, in turn, is defined, in pertinent part, as "every person who issues or proposes to issue any security...." *Id.* § 77b(4).

■ As set forth in section 2(11), the definition of a statutory underwriter turns on the relationship of the party and the offering. Professor Loss, a leading commentator on federal securities law, has observed that "[t]he term 'underwriter' is defined not with reference to the particular person's general business but on the basis of his *relationship to the particular offering* .... Any person who performs one of the specified functions in relation to the offering is a statutory underwriter even though he is not a broker or dealer." L. Loss, *supra,* at 277–78 (emphasis added). Thus, while a market maker could become a statutory underwriter if it held a particular relationship to the offering, the duties of a statutory underwriter cannot be imposed simply by virtue of one's status as a market maker.

Plaintiffs fail to cite any authority which imposes the duties of a statutory underwriter upon a market maker who simply purchased shares from other broker-dealers. Courts generally impose the duties of a statutory underwriter upon a broker-dealer if that party requests or accepts an offer to participate in the distribution of shares for the issuer or a control person thereof. *See, e.g., United States v. Wolfson,* 405 F.2d 779, 782 (2d Cir.1968), *cert. denied,*

394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969); *United States v. Crosby,* 294 F.2d 928, 939–40 (2d Cir.1961), *cert. denied sub nom. Mittelman v. United States,* 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523 (1962). In the instant action, plaintiffs have failed to allege specific facts in support of their contention that the Market Maker defendants who purchased stock on the open market from other broker-dealers have a duty to make a searching inquiry into whether the shares could by legally traded. Plaintiffs have simply alleged that the Market Maker defendants purchased the Laser Arms securities "from accounts the Laser Arms defendants established either at their own firms or with other Broker–Dealer defendants." Complaint, at ¶ 46. Although required by section 2(11), plaintiffs have failed to allege that the Market Maker defendants: (1) purchased any shares from the issuer [Laser Arms] or any control person thereof; (2) participated in an offer or sale of shares by Laser Arms or control persons thereof; or (3) directly or indirectly participated in underwriting the Laser Arms distribution. In sum, the absence of a proper relationship between the Market Maker defendants and the Laser Arms offering precludes a finding that the Market Maker defendants acted as statutory underwriters.

Therefore, Counts I and II are dismissed as to Market Makers Wien and Mikal for failure to allege the requisite privity under section 12(1). Counts I and II are further dismissed as to Market Makers Greentree, Hill Thompson, Investors Center, and First Jersey since their transactions involving Laser Arms stock were exempt from the registration requirements of section 5 and thus not subject to liability under section 12(1).

### b. Broker Exemptions

■ Section 4(4) exempts from liability for the sale of unregistered securities under section 12(1) "brokers' transactions executed upon customers' orders on an exchange or in the over-the-counter market but not the solicitation of such orders." 15 U.S.C. § 77d(4) (1982). However, as with the dealers' exemption in section 4(3)(A),

the brokers' exemption is not applicable to transactions involving an underwriter. *See Quinn & Co. v. SEC*, 452 F.2d 943, 947 (10th Cir.1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2059, 32 L.Ed.2d 344 (1972). Plaintiffs allege that defendant Zolop sold Laser Arms securities through accounts established at Hutton and Fitzgerald. Complaint, at ¶¶ 42(b), 43(c). Since a broker-dealer who assists the control person of an issuer in a distribution to the public qualifies as a statutory underwriter under section 2(11), the Complaint sufficiently alleges facts to establish that Hutton and Fitzgerald acted as statutory underwriters.

The statutory definition of underwriter in section 2(11) provides an exclusion for "person[s] whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission." 15 U.S.C. § 77b(11) (1982). Both Hutton and Fitzgerald contend that Zolop was an underwriter and, therefore, their interest in the transaction fits within the exclusion to the statutory underwriter definition. Plaintiffs characterize Zolop as "an undisclosed principal of Laser Arms," Complaint, at ¶ 11(b), but fail to allege that Zolop was an underwriter. Whether in fact Zolop was an underwriter thus triggering the section 2(11) exclusion is a question of fact reserved for trial. For the purpose of defendants' motions to dismiss presently before the Court, it is sufficient that the Complaint alleges facts supporting Hutton's and Fitzgerald's status as underwriters. *See* Complaint, at ¶¶ 42(b), 43(c).

Therefore, the status of Hutton and Fitzgerald as statutory underwriters precludes application of the section 4(4) broker exemption. Consequently, dismissal of Count II as to the Broker–Dealers is limited to plaintiffs' failure to allege the requisite privity under section 12(1).

3. Respondeat Superior Liability

■■■ Count II asserts that Fitzgerald is further liable under section 12(1) for the acts of its employee, Bernick, under the doctrine of respondeat superior. When the doctrine of respondeat superior is used to assert liability under the federal securities laws, the paramount concern becomes whether the employee acted within the scope of his employment. *See Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir.), *cert. denied sub nom. Wood Walker & Co. v. Marbury Management, Inc.*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *Savino v. E.F. Hutton & Co.*, 507 F.Supp. 1225, 1244 n. 22 (S.D.N.Y.1981).

Plaintiffs allege sufficient facts to defeat Fitzgerald's motion to dismiss and require the trier of fact to address the respondeat superior issue. The Complaint alleges that Fitzgerald employed Bernick as a securities trader, and, in that capacity, "Bernick participated in the conspiracy by knowingly assisting the sale of Laser Arms stock for the benefit of Zolop and other Laser Arm defendants." Complaint, at ¶ 11(d). Plaintiffs further allege that Bernick, while acting within the normal scope of his employment, assisted Zolop to set up an account at Fitzgerald and distribute illegal Laser Arms shares. *Id.* at ¶ 43(c). Furthermore, since Bernick bought and sold securities, his acts appear to be incidental to transactions which a securities trader is authorized to conduct by the broker-dealer who employed him. *Cf. Lewis v. Walston & Co.*, 487 F.2d 617, 624 (5th Cir.1973) ("If a particular act is authorized or sufficiently similar to an authorized act, finding that act to be within the scope of employment does not require that the act have conferred any particular benefit, financial or otherwise, on the employer.").

Fitzgerald incorrectly relies upon the affidavit of Gerald Fitzgerald to prove that Bernick acted as an independent contractor and not as an agent of Fitzgerald. *See* Affidavit of Gerald Fitzgerald, ¶ 2, 86 Civ. 3591 (JMC) (S.D.N.Y. Jan. 13, 1987). Factual issues outside of the complaint must be disregarded on a motion to dismiss. *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). For the purpose of the instant motion, it is sufficient that the Complaint alleges that Bernick was an employee of Fitzgerald acting as a registered representative. *See* Complaint, at ¶ 43(c).

Accordingly, Count II is allowed to stand insofar as it states a claim against Fitzgerald under principles of respondeat superior.

### B. *Secondary Liability under Section 12(1)*

■ Count II asserts that the Broker–Dealer defendants "aided and abetted Laser Arms and Zolop's scheme to illegally distribute unregistered Laser Arms shares by failing to exercise their duties of inquiry set forth herein, or by exercising such duties in a reckless manner." Complaint, at ¶ 41. Plaintiffs similarly assert that the Market Maker defendants "further aided and abetted the scheme by failing to exercise their duties of inquiry, by permitting themselves to be listed on the NQB 'pink sheets,' and by otherwise enabling Laser Arms shares to be marketed as set forth herein." *Id.*

Plaintiffs broadly and imprecisely assert that a cause of action exists for aiding and abetting under section 12 without distinguishing between section 12(1) and 12(2). While there is ample case law in the Second Circuit with respect to aiding and abetting liability under section 12(2), the Court is not aware of any authority supporting secondary liability under section 12(1). Plaintiffs' reliance on *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270 (S.D.N.Y.1984) and *In re Equipment Leasing Securities Litigation*, 642 F.Supp. 718 (E.D.N.Y.1986) is unpersuasive since neither case imposes aiding and abetting liability under section 12(1). Accordingly, Count II is dismissed as to all moving Broker–Dealer defendants and Market Maker defendants insofar as it asserts a claim under section 12(1) for aiding and abetting the Laser Arms defendants' scheme to illegally distribute unregistered Laser Arms securities.

For all the aforementioned reasons, Counts I and II are dismissed in their entirety as to all moving defendants, with the exception of Count II insofar as it asserts a claim under section 12(1) against Fitzgerald based on the doctrine of respondeat superior.

### II. COUNT III

Count III asserts a claim against all defendants under section 12(2) of the 1933 Act.

### A. *Section 12(2) Liability*

■ Section 12(2) is an anti-fraud provision which imposes liability on any person who "offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading...." 15 U.S.C. § 77*l* (2) (1982). Unlike section 12(1), liability under section 12(2) is subject to numerous defenses, including the statutory defense that the seller "did not know, and in the exercise of reasonable care could not have known, of such untruth or omission...." *Id.* The existence of this built-in defense, coupled with the fact that the provision was intended to prevent fraud, has resulted in a somewhat relaxed privity requirement under section 12(2). *See* L. Loss, *supra*, at 1183.

■ Although section 12 appears to contemplate an action by a buyer against his immediate seller, the Second Circuit has long recognized the doctrine imposing liability under section 12(2) on those who substantially participated in the transaction as aiders and abettors. *See, e.g., Akerman v. Oryx Communications, Inc.*, 810 F.2d 336, 344 (2d Cir.1987); *Katz v. Amos Treat & Co.*, 411 F.2d 1046, 1053–55 (2d Cir.1969); *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 274–76 (S.D.N.Y.1984). *In re Caesars Palace Sec. Litig.*, 360 F.Supp. 366, 378 (S.D.N.Y.1973). Thus, "the term 'seller,' for purposes of determining section [12(2)] liability, is not limited to one who actually transfers title, but *is* limited to one who is in privity with the purchaser or one whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place." *Stokes v. Lokken*, 644 F.2d 779, 785 (8th Cir.1981) (citation and footnote omitted) (emphasis in original). However, when section 12(2) liability is premised upon "substantial partic-

ipation" in the transaction rather than the existence of privity, proof of scienter is a necessary element. *Akerman*, 810 F.2d at 344; *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1298 (2d Cir.1973) (en banc).

The mere allegation of aiding and abetting without more will not suffice to sustain a complaint asserting liability under section 12(2) in the absence of privity. *See McFarland v. Memorex Corp.*, 493 F.Supp. 631, 647 (N.D.Cal.1980); *Lorber v. Beebe*, 407 F.Supp. 279, 295 (S.D.N.Y.1975). Although the Complaint in the instant action sets forth the specific factual manner in which the Broker–Dealer defendants and Market Maker defendants assisted the fraudulent scheme, the necessary element of scienter is conspicuously absent.[7] Therefore, Count III is dismissed as to the moving Broker–Dealer defendants and Market Maker defendants.

#### B. *Respondeat Superior Liability*

Count III asserts that Fitzgerald is further liable under section 12(2) for the acts of its employee, Bernick, under the doctrine of respondeat superior. For all the reasons set forth in the discussion of respondeat superior liability under section 12(1), Fitzgerald's motion to dismiss the section 12(2) claim based upon respondeat superior is denied.

### III. COUNT IV

Count IV asserts that the Laser Arms defendants and Broker–Dealer defendant Fitzgerald are liable under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982) [the "Exchange Act"] and Rule 10b–5 promulgated thereunder. As to defendant Fitzgerald, plaintiffs allege that the firm is liable under section 10(b) for the acts of its employee, Bernick, under the doctrine of respondeat superior. Complaint, at ¶ 88. As plain-

tiffs have pled a valid theory of respondeat superior theory of liability, Fitzgerald's motion to dismiss Count IV is denied.

### IV. COUNT V

Count V asserts a claim against the Broker–Dealer defendants and the Market Maker defendants for primary and secondary liability under section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. The Broker–Dealer defendants and the Market Maker defendants move to dismiss Count V pursuant to Rule 12(b)(6) for failure to allege the elements of material misrepresentation or omission of fact, reliance, and scienter. Alternatively, defendants move to dismiss pursuant to Rule 9(b) for failure to plead fraud with the requisite particularity.

The Supreme Court has repeatedly characterized the "fundamental purpose" of the Exchange Act as implementing a " 'philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry.' " *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972) (quoting *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963)); *accord Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977). Consistent with the fundamental purpose of the Exchange Act, section 10(b) makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b) (1982).[8]

---

**7.** For a detailed analysis of plaintiffs' failure to plead scienter, see the discussion under Count V of aiding and abetting liability under section 10(b) of the Securities Exchange Act of 1934.

**8.** Section 10(b) provides in full:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of

the mails, or of any facility of any national securities exchange—
. . .
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Com-

Rule 10b–5, promulgated by the Commission pursuant to the power conferred by section 10(b), prohibits any "artifice to defraud" or any act which "would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(a), (c) (1988).[9]

### A. Primary Liability

■■■ In order to state a claim for relief under section 10(b) and Rule 10b–5, a plaintiff must allege that (1) the defendant misrepresented a material fact or failed to disclose material information; (2) in connection with the purchase or sale of securities; (3) committed with scienter; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985). The Complaint adequately alleges the element of reliance, but fails to properly allege a material misrepresentation committed with the requisite scienter.

### 1. Material Misrepresentation or Omission of Fact

The Broker–Dealer defendants and Market Maker defendants argue that Count V should be dismissed because the Complaint fails to allege a material misrepresentation or omission of fact. Plaintiffs, however, contend that the Exchange Act reaches beyond the misrepresentation or nondisclosure context and encompasses any wrongdoing in connection with the sale or purchase of a security that rises to the level of a deceptive practice. Plaintiffs are correct in their characterization of the scope of section 10(b) and Rule 10b–5.

■■ The existence of a material misrepresentation or omission of fact is clearly central to liability under section 10(b). However, "[n]ot every violation of the antifraud provisions of the federal securities law can be, or should be, forced into a category [of] 'misrepresentations' or 'nondisclosure.' Fraudulent devices, practices, schemes, artifices and courses of business are also interdicted by the securities law." *Competitive Assocs., Inc. v. Laventhol, Krekstein, Horwath & Horwath*, 516 F.2d 811, 814 (2d Cir.1975). Therefore, a "misrepresentation" is properly alleged if the plaintiff establishes fraudulent conduct that takes the form of a scheme or artifice to defraud; an act, practice, or course of business that operated as a fraud; or a material misrepresentation or omission of fact. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668 (1976); *Starkman v. Warner Communications, Inc.*, 671 F.Supp. 297, 301 (S.D.N.Y.1987).

■■ Plaintiffs adequately allege a "misrepresentation" by the Broker–Dealer defendants but not by the Market Maker defendants. Paragraph 95 contains the relevant allegations:

The Broker–Dealer defendants directly participated in, and aided and abetted the Laser Arms defendants' fraudulent scheme by failing to exercise their duty of inquiry, or by exercising such duty in a reckless manner. As a direct result of their failure to diligently exercise such a duty, the fraudulent distribution of unregistered and illegal Laser Arms stock was able to take place. The Market Maker defendants further aided and abetted the scheme by failing to exercise

mission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1982).

**9.** Rule 10b–5 provides in full:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
(a) to employ any device, scheme or artifice to defraud,
(b) to make any untrue statement of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
(c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1988).

their duties of inquiry, by permitting themselves to be listed on the NQB 'pink sheets,' and by otherwise enabling Laser Arms shares to be marketed. The Broker–Dealer and Market Maker defendants' misconduct thereby substantially assisted the fraudulent scheme.

Complaint, at ¶ 95. Bearing in mind that a court must draw all inferences in favor of the pleader on a motion to dismiss, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), plaintiffs have alleged a course of business which operates as a fraud within the meaning of Rule 10b–5(c). However, plaintiffs have failed to plead the underlying acts constituting the fraud with the requisite particularity demanded by Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). To satisfy the particularity requirement of Rule 9(b), "a complaint 'must allege with some specificity the acts constituting the fraud;' conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982) (quoting *Rodman v. Grant Found.*, 608 F.2d 64, 73 (2d Cir. 1979)). This requires that the complaint "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. Sept. 12, 1989); *see also* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 9.03, at 9–20 to –24 (1985).

The substance of plaintiffs' securities fraud claim in Count V is that the Broker–Dealer defendants and the Market Maker defendants failed to exercise the duty of inquiry in their capacity as statutory underwriters, thereby substantially assisting the fraudulent distribution of Laser Arms securities. Plaintiffs have met the specificity requirement of Rule 9(b) with respect to the Broker–Dealers but not the Market Makers. The Complaint alleges acts by the Broker–Dealer defendants to properly establish that they acted as statutory underwriters within the meaning of section 2(11) of the 1933 Act. *See* Complaint, at ¶¶ 40–45. The Complaint further alleges the specific manner in which the Broker–Dealer defendants breached their duty of inquiry. *See id.* at ¶¶ 48, 49. With respect to the Market Maker defendants, however, plaintiffs have failed to allege with proper specificity that they held a special relationship to the offering to warrant the imposition of the duties of a statutory underwriter.

### 2. Reliance

Proof of reliance on the alleged misrepresentation or omission of fact is required in all section 10(b) actions. *See Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 205–06, 96 S.Ct. 1375, 1387, 47 L.Ed.2d 668 (1976). The function of the reliance requirement in section 10(b) cases is to provide a causal nexus between the fraudulent conduct and the plaintiff's injuries, thereby establishing that the plaintiff would not have purchased or sold the security but for the fraudulent conduct. *See Basic*, 108 S.Ct. at 989; *Ross v. Bank South NA*, 837 F.2d 980, 992 (11th Cir.1988); *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 92 (2d Cir.1981). In an attempt to satisfy the reliance element, the Complaint alleges that "[i]n purchasing their Laser Arms shares, plaintiffs relied upon the integrity of the market and assumed that the shares they purchased had satisfied the registration requirements of the securities laws." Complaint, at ¶ 96. Thus, plaintiffs assert a fraud on the market theory of reliance rather than the traditional direct reliance on the material misrepresentation or omission.

The Second Circuit has recognized the fraud on the market theory in those cases where requiring proof of direct reliance would effectively preclude recovery under section 10(b). *See, e.g., Panzirer v. Wolf*, 663 F.2d 365, 368 (2d Cir.1981), *vacated on other grounds sub nom. Price Waterhouse v. Panzirer*, 459 U.S. 1027, 103 S.Ct.

434, 74 L.Ed.2d 594 (1982); *Ross v. A.H. Robins*, 607 F.2d 545, 554 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). However, proper use of the fraud on the market theory does not eliminate the element of reliance from a section 10(b) action. Rather, it creates a rebuttable presumption of reliance, whereby "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Basic*, 108 S.Ct. at 992.

The Second Circuit has limited the application of the fraud on the market theory to developed markets, which represents the "efficient market" model. *See, e.g., Panzirer*, 663 F.2d at 368; *A.H. Robins*, 607 F.2d at 553; *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 931 (S.D.N.Y.1989); *Zuckerman v. Harnischfeger Corp.*, 591 F.Supp. 112, 122 (S.D.N.Y. 1984).[10] The underlying premise of the fraud on the market theory "assumes that the market is a transmission belt which efficiently translates all information concerning a security into a price. In other words, it presumes the operation of an efficient market, a market in which 'security prices reflect all available public information about the economy, about financial markets, and about the specific company involved.'" *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1264 (S.D.N.Y. 1984) (quoting J. Van Horne, *Financial Management and Policy* 45 (4th ed. 1977)) (citation omitted). Therefore, the Court finds that "application of the theory is more questionable in situations involving 'new issues in an undeveloped market.'"

*In re Union Carbide Corp. Consumer Prods. Business Sec. Litig.*, 676 F.Supp. 458, 468 (S.D.N.Y.1987) (quoting *Lipton v. Documentation, Inc.*, 734 F.2d 740, 745, 746 (11th Cir.1984) (en banc), *cert. denied sub nom. Peat, Marwick, Mitchell & Co. v. Lipton*, 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985)).

The Broker–Dealer defendants and Market Maker defendants argue that plaintiffs have failed to plead the requisite element of reliance because Laser Arms stock traded in an inefficient market. Plaintiffs, however, contend that an active market existed in Laser Arms securities. In support of its position, plaintiffs allege that Laser Arms had been listed in the NQB pink sheets and, therefore, was trading in the over-the-counter market. Complaint, at ¶¶ 40, 41. The Complaint further alleges that various Market Makers held themselves out as specialists for the trading of Laser Arms stock. *Id.* at ¶¶ 46, 47. Whether in fact Laser Arms traded in an efficient market is a question of fact. Therefore, resolution of that issue must await presentation of further proof at trial.

### 3. Scienter

An actionable claim for primary liability under section 10(b) requires proof of scienter—"a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). Although *Hochfelder* held that mere negligence does not satisfy the scienter requirement for section 10(b) liability, the Supreme Court expressly declined to determine whether reckless behavior satisfies the scienter necessary for such a claim. *See id.; see also Aaron v.*

---

**10.** "An efficient capital market is one in which the price of stock at a given time is the best estimate of what the price will be in the future." Fischel, *Use of Modern Finance Theory in Securities Fraud Cases Involving Actively Traded Securities*, 38 Bus.Law. 1, 4 n. 9 (1982). A number of circuits have applied the fraud on the market theory to newly issued shares in an undeveloped market. *See Lipton v. Documentation, Inc.*, 734 F.2d 740, 746 (11th Cir.1984), *cert. denied sub nom. Peat, Marwick, Mitchell & Co. v. Lipton*, 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985); *T.J. Raney & Sons v. Fort Cobb, Okla-*

*homa Irrigation Fuel Auth.*, 717 F.2d 1330, 1333 (10th Cir.1983), *cert. denied, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke v. T.J. Raney & Sons*, 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984); *Shores v. Sklar*, 647 F.2d 462, 469–71 (5th Cir.1981) (en banc), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); *cf. Peil v. Speiser*, 806 F.2d 1154, 1161 n. 10 (3rd Cir.1986) ("While [the fraud on the market theory] presumption is plausible in developed markets, it may not be in the case of newly issued stock.").

*SEC,* 446 U.S. 680, 686 n. 5, 100 S.Ct. 1945, 1950, 64 L.Ed.2d 611 (1980) (declining to address the scienter issue reserved in *Hochfelder* ). However, the Second Circuit has repeatedly held that proof of reckless conduct will generally satisfy the scienter requirement for *primary* violations under section 10(b). *See, e.g., Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 575 (2d Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *IIT v. Cornfeld,* 619 F.2d 909, 923 (2d Cir.1980); *cf. Mayer v. Oil Field Sys. Corp.,* 803 F.2d 749, 756 (2d Cir.1986) ("Scienter requires at least knowing misconduct, which may, of course, be proven as a matter of inference from circumstantial evidence."). For the purpose of section 10(b), "[r]eckless conduct is, at the least, conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir.) (quoting *Sanders v. John Nuveen & Co.,* 554 F.2d 790, 793 (7th Cir.1977), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

Plaintiffs allege that the Broker–Dealer defendants and the Market Maker defendants participated in the Laser Arms scheme in violation of section 10(b) by failing to exercise their duty of inquiry or by exercising their duty in a reckless manner, thereby substantially assisting the fraudulent Laser Arms scheme. Complaint, at ¶ 95. This allegation fails to meet the requirements of Rule 12(b)(6) and Rule 9(b). First, it fails to state a cause of action for which relief may be granted because plaintiffs simply allege a breach of duty by defendants. Mere negligence, however, clearly is not proscribed by section 10(b) or Rule 10b–5. *See Aaron,* 446 U.S. at 691, 100 S.Ct. at 1953; *Hochfelder,* 425 U.S. at 197–99, 96 S.Ct. at 1383. Second, to the

extent that plaintiffs' allegation of "reckless conduct" may be loosely construed to state a cause of action for Rule 12(b)(6) purposes, such an allegation is not pled with the particularity demanded by Rule 9(b). To plead scienter with the proper specificity, plaintiffs must adequately identify the "circumstances indicating conscious behavior by the defendants." *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989). Plaintiffs have failed to meet this standard.

Accordingly, defendants' motions to dismiss the section 10(b) claim for primary liability are granted.

## B. *Aiding and Abetting Liability*

 The imposition of aiding and abetting liability requires three elements: (1) the existence of a securities law violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted in the primary violation. *See Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *IIT v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980). Due to the numerous collateral participants in a large securities transaction, the knowledge or scienter requirement becomes the pivotal element for a section 10(b) aiding and abetting claim. *See Cumis Ins. Soc'y, Inc. v. E.F. Hutton & Co.,* 457 F.Supp. 1380, 1387 n. 9 (S.D.N.Y.1978).

Recklessness satisfies the scienter requirement for aider and abettor liability where " 'the alleged aider and abettor owes a fiduciary duty to the defrauded party.'" *Sirota,* 673 F.2d at 575 (quoting *Rolf,* 570 F.2d at 44). Absent a fiduciary relationship, "the 'scienter' requirement scales upward—the assistance rendered must be knowing and substantial." *Armstrong,* 699 F.2d at 91; *accord Sirota,* 673 F.2d at 575; *Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.,* 602 F.2d 478, 484–85 (2d Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).[11]

---

11. The Second Circuit has suggested in dictum that recklessness satisfies the scienter requirement for aiding and abetting liability absent a fiduciary relationship where an accountant can reasonably foresee that third parties will rely on its audit or opinion letter. *See Oleck v. Fisher,* 623 F.2d 791, 794–95 (2d Cir.1980); *see also Stevens v. Equidyne Exractive Indus. 1980,* 694 F.Supp. 1057, 1066 (S.D.N.Y.1988) (applying the recklessness standard where an attorney can

However, the Court need not pass on whether recklessness is sufficient to state a cause of action for aiding and abetting liability in view of the Court's finding that the Complaint failed to plead the underlying reckless conduct with the particularity required by Rule 9(b).

For all the aforementioned reasons, Count V is dismissed insofar as it asserts a claim against the Broker–Dealer defendants and the Market–Maker defendants for primary and secondary liability under section 10(b).

## V. COUNT VI

■ Count VI asserts a claim against the Laser Arms defendants and Broker–Dealer defendant Fitzgerald alleging a pattern of racketeering activity as part of the overall scheme to defraud the plaintiffs in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982 & Supp. V 1987) ["RICO"]. In their Complaint, plaintiffs assert violations of section 1962(b) and (d). The crux of Fitzgerald's motion to dismiss is the plaintiffs' failure to adequately plead "a pattern of racketeering activity."

RICO's substantive provisions impose criminal and civil liability upon "any person" who engages in certain "prohibited activities." *See* 18 U.S.C. § 1962 (1982). Section 1962 proscribes the use or investment of income derived "from a pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in interstate commerce, *id.* § 1962(a); the acquisition or maintenance of any interest in or control of such an enterprise "through a pattern of racketeering activity," *id.* § 1962(b); the participation by any person employed by or associated with the enterprise in the conduct of such enterprise's affairs "through a pattern of racketeering activity," *id.* § 1962(c); and the conspiring to violate any of the provisions of subsections (a) through (c), *id.* § 1962(d). A basic reading of RICO makes

it clear that "[a] viable claim for damages ... requires a proper allegation that the defendant has committed two or more 'predicate' acts, 18 U.S.C. § 1961(1), constituting a 'pattern of racketeering.'" *Anitora Travel, Inc. v. Lapian*, 677 F.Supp. 209, 214 (S.D.N.Y.1988); *accord Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 14 (2d Cir.1989).

A "pattern of racketeering activity" requires the commission within a ten year period of at least two predicate acts which are indictable under certain federal criminal provisions. *See* 18 U.S.C. § 1961(1), (5) (1982 & Supp. V 1987). Three such provisions include mail fraud, 18 U.S.C. § 1341 (1982), wire fraud, 18 U.S.C. § 1343 (1982), and securities fraud, 15 U.S.C. § 78j (1982). *See* 18 U.S.C. § 1961(1)(B), (D) (Supp. V 1987). However, the Court need not pass on whether the Complaint alleges a pattern of racketeering activity within the bounds recently established by the Supreme Court in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Complaint suffers from a more fundamental defect since it fails to plead the predicate acts of fraud with the particularity and specificity required by Rule 9(b). *See Beauford v. Helmsley*, 865 F.2d 1386, 1392 (2d Cir.1989) (en banc) (finding that the pleading satisfied the RICO pattern requirement but failed to meet the particularity requirement of Rule 9(b)), *vacated for further consideration*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), *upheld* by order of Sept. 15, 1989.

Plaintiffs assert that Fitzgerald committed numerous acts of wire/mail fraud and securities fraud in the course of the fraudulent scheme to distribute unregistered Laser Arms securities. Complaint, at ¶¶ 103–105. "Where mail and/or wire fraud violations are treated by a plaintiff as 'predicate acts' constituting a pattern of racketeering activity, those fraud violations must be pleaded with the specificity and particularity required by Fed.R.Civ.P. 9(b)." *Anitora*

reasonably foresee that third parties will rely on its information); *In re Union Carbide Corp. Consumer Prods. Business Sec. Litig.*, 676 F.Supp. 458, 470–71 (S.D.N.Y.1987) (same for investment bankers); *In re Investors Funding Corp. of New York Sec. Litig.*, 523 F.Supp. 550, 558 (S.D.N.Y.1980) (same for accountants).

*Travel,* 677 F.Supp. at 214. Plaintiffs, however, merely alleged that Fitzgerald "communicated, or caused communications to be made, by wire in interstate commerce or mail fraud, as described herein, which caused plaintiffs to purchase Laser Arms stock, thereby violating § 1342 and § 1962." Complaint, at ¶ 104. Such a conclusory pleading is insufficient to satisfy Rule 9(b). Similarly, securities fraud under § 10(b) of the Exchange Act cannot serve as a predicate act since the Court earlier dismissed the section 10(b) claim asserted in Count V for failure to plead fraud with the requisite particularity demanded by Rule 9(b).

Accordingly, plaintiffs' failure to plead fraud with proper specificity warrants dismissal of Count VI as to defendant Fitzgerald.

## VI. COUNT VII

Count VII asserts a claim against all defendants for common law negligent misrepresentation. Plaintiffs bring this state claim pursuant to principles of pendent jurisdiction.

Pendent jurisdiction permits the court to exercise judicial power over a case asserting federal and state claims when the federal claim is sufficient to confer subject matter jurisdiction on the court and both claims derive from a common nucleus of operative fact. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 726, 86 S.Ct. at 1139. The policy of avoiding needless decisions of state law dictates that the state law claims should be dismissed and preserved for resolution in state tribunals when the federal claims are dismissed before trial. *Id.; Mayer v. Oil Field Sys. Corp.,* 803 F.2d 749, 757 (2d Cir.1986). In the instant action, Counts I through VI have been dismissed in their entirety as to all moving Broker–Dealer defendants and Market Maker defendants,

with the exception of Counts II, III, and IV insofar as they assert federal securities violations against Fitzgerald under the doctrine of respondeat superior. Since the content and extent of fiduciary duties are issues of state law, *see Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 478–79, 97 S.Ct. 1292, 1303–04, 51 L.Ed.2d 480 (1977), state claims will predominate this action as to the moving defendants. Notwithstanding the remaining federal claims against Fitzgerald, the Court declines to exercise pendent jurisdiction. *See Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1140 ("Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed.").

Therefore, the state claims asserted in Count VII against the moving Broker–Dealer defendants and the Market Maker defendants are dismissed without prejudice.

## CLASS CERTIFICATION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs move to certify a class consisting of all persons who purchased Laser Arms common stock between January 1, 1986 and April 21, 1986, and who were damaged thereby. For the purposes of Count I, plaintiffs further seek to certify subclasses, each of which is composed of all class members who purchased Laser Arms common stock from each of the respective Market Maker defendants, either directly or indirectly through a broker. Greentree and First Jersey are the only defendants who oppose the motion for class certification.[12]

A member of a class may sue as a representative party if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly

---

**12.** Other defendants who join in the submissions of First Jersey and Greentree by letter include Mikal; Investors Center; Hill Thompson; Hutton; Fitzgerald; Dillon Securities; Brooks, Weinger, Robbins & Leeds, Inc.; and Teichberg, Loeb, Waxman & Rabinowitz.

and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition to the requirements of Rule 23(a), the class action must be appropriate under one of the three subdivisions of Rule 23(b). *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). In the instant action, plaintiffs rely on Rule 23(b)(3), which requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### A. *Numerosity*

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all class members is rendered impracticable. Fed.R.Civ.P. 23(a)(1). Whether in fact joinder is impracticable involves a subjective determination concerning the factual circumstances of the case. Since the numerosity requirement speaks in terms of impracticability rather than impossibility, plaintiffs need not enumerate the precise number of potential plaintiffs in the class when reasonable estimates will suffice. *See Luyando v. Bowen*, 124 F.R.D. 52, 55 (S.D.N.Y. 1989); *Krome v. Merrill Lynch & Co.*, 637 F.Supp. 910, 920 (S.D.N.Y.), *vacated in part*, 110 F.R.D. 693 (S.D.N.Y.1986). However, mere speculation as to the size of the class fails to satisfy the numerosity requirement. *Irvin E. Schermer Trust v. Sun Equities Corp.*, 116 F.R.D. 332, 336 (D.Minn.1987); *Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 365 n. 5 (E.D.Pa.1980). Plaintiffs allege that "[w]hile the exact number of members of the Class is not known to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are at least several hundred members of the Class and numerous members of each Subclass, and that these Class and Subclass members are geographically dispersed." Complaint, at ¶ 16. The Court finds plaintiffs' estimate to be reasonable

and not the product of unwarranted speculation. Approximately 900,000 shares of Laser Arms common stock traded during the class period. *Id.* Although this figure fails to specify how many retail customers actually purchased Laser Arms stock, the Court finds that the potential number of class members would render joinder impractical. Furthermore, the geographical diversity among potential claimants that resulted from the national trading of Laser Arms securities is an additional impediment to joinder. *See Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir.1968); *Krome*, 637 F.Supp. at 921.

### B. *Common Questions*

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Fed.R.Civ.P. 23(a). Plaintiffs must establish "only that questions of law or fact be shared by the prospective class, although not all questions of law or fact raised need be common." *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981). However, as required by Rule 23(b)(3), the common questions of law or fact must predominate over the individual questions.

This action presents a number of factual and legal issues common to the class and subclass members regarding the respective roles of each defendant in the distribution of Laser Arms securities. These issues include: (1) whether the Laser Arms defendants created a fraudulent scheme to illegally distribute unregistered shares of Laser Arms stock; (2) whether the Market Maker defendants and Broker–Dealer defendants directly participated in or aided and abetted the alleged securities fraud; (3) whether the Market Maker defendants and Broker–Dealer defendants breached their duty of care; (4) whether any of the defendants made false statements of material facts or failed to disclose material facts necessary to render the statements not misleading; and (5) whether any of the defendants sold unregistered securities to the public. There is no doubt that the "existence, materiality, and character of the alleged misrepresentations and omis-

sions" in this securities action constitute common questions. *Id.* at 93. Further, whether the Marker Maker defendants and the Broker–Dealer defendants had a duty to inform plaintiffs that the Laser Arms securities were unregistered presents additional common issues. *See id.* The numerous common questions of law and fact satisfy the requirement of Rule 23(a). *See Tedesco v. Mishkin,* 689 F.Supp. 1327, 1334 (S.D.N.Y.1988).

As required by Rule 23(b)(3), these common questions must predominate over any individual questions. Defendants argue that individualized issues predominate because proof of actual reliance is necessary to establish liability under section 10(b) and Rule 10b–5 of the Exchange Act. The Court disagrees. As to the section 10(b) and Rule 10b–5 claims, plaintiffs have alleged a fraud on the market theory of reliance. As discussed earlier, proper use of the fraud on the market theory creates a rebuttable presumption of reliance and thus obviates the need for each individual class member to prove direct reliance on the alleged misrepresentation. If at a later stage of the proceedings the Court determines that the fraud on the market theory is not applicable because Laser Arms securities did not trade in an efficient market, the Court could simply order separate hearings on the reliance issue. *See Green,* 406 F.2d at 301; *Dura–Bilt,* 89 F.R.D. at 98. Such individual issues, however, would not predominate over common questions. *See Tedesco,* 689 F.Supp. at 1335. The gravamen of plaintiffs' Complaint is that defendants engaged in a common course of fraudulent conduct to promote the illegal distribution of unregistered Laser Arms securities. Although some individual issues will arise in this securities action, "to allow various secondary issues of plaintiffs' claim to preclude certification of a class

would render the rule an impotent tool for private enforcement of the securities laws." *Id.* at 99. The Court finds that plaintiffs have satisfied the requirement of Rule 23(b)(3) that common issues predominate over individual issues.

The finding that common issues predominate the action, however, does not extend to plaintiffs' pendent state law claims for negligent misrepresentation, conversion, and fraud asserted in Counts VII, VIII, and IX, respectively. In *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Supreme Court cautioned that a court "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" *Id.* at 821, 105 S.Ct. at 2979. The Supreme Court rejected the view that "in a nationwide class action where procedural due process guarantees of notice and adequate representation were met, 'the law of the forum should be applied unless compelling reasons exist for applying a different law.'" *Id.* at 822–23, 105 S.Ct. at 2980 (quoting the lower court decision). Therefore, with respect to claims for common law negligent misrepresentation, conversion, and fraud, the Court must apply the law of each state in which a potential class member resides. Since there are several hundred potential class members who are geographically dispersed, it is likely that the plaintiffs' common law claims will involve the laws of a majority of the states. In the absence of a single state law governing each entire common law claim, common questions of law would not predominate over individual questions. Therefore, plaintiffs' pendent state law claims for negligent misrepresentation, conversion, and fraud are not amenable to class treatment.[13]

13. *See Bresson v. Thomson McKinnon Sec.,* 118 F.R.D. 339, 343–44 (S.D.N.Y.1988) (finding that common issues of law do not predominate in a claim for common law negligence); *Sanders v. Robinson Humphrey/American Express, Inc.,* 634 F.Supp. 1048, 1067–69 (finding that common issues of law do not predominate in a claim for common law fraud and negligent misrepresentation), *aff'd in part, rev'd in part, Kirk-*

patrick *v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir.1987). At least one court in this district has found common law fraud claims amenable to class treatment. *See Bresson,* 118 F.R.D. at 343–44. This Court, however, is not bound by the reasoning of *Bresson.* Although a survey of the common law of fraud as it has evolved in all fifty states is clearly beyond the scope of this opinion, the Court finds that signif-

## C. *Typicality*

Rule 23(a)(3) requires that the claims of the class representative be typical of the claims of the class members. Fed.R.Civ.P. 23(a)(3). In order to satisfy the typicality requirement, the class representative's claims must "arise[ ] from the same event or course of conduct that gives rise to claims of other class members and the claims [must be] based on the same legal theory. By advancing their own interests, plaintiffs will advance the interests of the class." *Dura–Bilt*, 89 F.R.D. at 99 (footnote omitted). Plaintiffs in the instant action satisfy the typicality requirement by establishing that the same allegedly unlawful conduct affected the named plaintiffs and the class and subclass members. *See Krome*, 637 F.Supp. at 921.

## D. *Fair and Adequate Representation*

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interest of the class members. Fed. R.Civ.P. 23(a)(4). In order to satisfy this requirement, plaintiffs counsel must be qualified to vigorously pursue the lawsuit and the class representative's interests must not be antagonistic to those of the class. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968); *In re Baldwin–United Corp. Litig.*, 122 F.R.D. 424, 428–29 (S.D.N.Y.1986). Both requirements have been met in the instant action. As previously noted, the plaintiffs interests are identical to those of the proposed class and subclass members. Thus, the Court is assured that " 'the representatives [will] put up a real fight,' " thereby satisfying the constraints of due process. *Dolgow v. Anderson*, 43 F.R.D. 472, 495 (E.D.N.Y. 1968) (quoting Chafee, *Some Problems of Equity* 231 (1950)). Further, plaintiffs counsel have demonstrated their experience in securities litigation and the Court is confident that counsel will proceed vigorously on behalf of all class and subclass members.

The two requirements of Rule 23(b)(3) provide the final hurdles to certification.

First, as set forth above, common questions of law and fact predominate over individual questions. Second, a class action is superior to other available methods for a fair adjudication of the controversy. There can be no doubt that actions asserting federal securities law violations typically provide an appealing situation for the expedient of class representation. *See, e.g., Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 53 (S.D.N.Y.1987); *Dura–Bilt*, 89 F.R.D. at 103. The superiority of a class action in the instant litigation is beyond dispute due to the large number of claims, most of which may be too small to warrant individual lawsuits.

Having certified the class and subclass as defined by plaintiffs under Rule 23(b)(3), the Court must consider the subject of notice to the class members. Rule 23(c)(2) provides that "[i]n any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2). Plaintiffs' counsel have indicated that they can identify the members of the proposed class and subclasses through the use of trading records detailing the sales of Laser Arms securities by each Marker Maker defendant. *See* Plaintiffs' Reply Memorandum of Law in Support of Motion for Class and Subclass Certification, at 12, 86 Civ. 3591 (JMC) (S.D.N.Y. Nov. 14, 1988). Therefore, the Court finds that notice by first class mail is the "best practicable notice." *See Peil*, 86 F.R.D. at 375. In accordance with Rule 23(c)(2), the notice shall advise each class and subclass member that (1) the Court will exclude him from the class if he so requests within two months of the receipt of notice; (2) judgment will bind all members who have not requested exclusion from the class or subclass regardless of whether judgment is favorable

icant differences exist. *See Sanders*, 634 F.Supp. at 1068–69 (highlighting the major differences in state treatment of common law fraud).

or not; and (3) any member who does not request exclusion may nevertheless enter an appearance through his counsel. *See* Fed.R.Civ.P. 23(c)(2). The cost of such notice shall be borne by plaintiffs.

## MOTIONS TO WITHDRAW
## AS COUNSEL

■ Numerous counsel for defendants have moved pursuant to Rule 3(c) of the General Rules of this Court to withdraw as counsel of record. Baer, Marks & Upham moves to withdraw as counsel for Market Maker defendant Greentree, Ronald S. Kahn moves to withdraw as local counsel for Market Maker defendant DeVanney, and Lysaght, Lysaght & Kramer, P.C. moves to withdraw as counsel for Laser Arms defendant Judge.

Rule 3(c) of the General Rules for this district provides that an attorney of record may withdraw from a case only with leave of court, which requires "a showing by affidavit of satisfactory reasons for withdrawal...." Local Rules S.D.N.Y., General Rule 3(c). There being no opposition from any party to this action and no threat of delay to any pending motion, the motions to withdraw as counsel of record are granted. All defendants must retain new counsel or appear on their own behalf pro se within thirty (30) days of the filing of this Memorandum and Order. If a defendant chooses to appear pro se, he shall designate either a local address or the Clerk of the Court for service of papers in accordance with General Rule 3(b) of this Court. Since corporations and partnerships are fictitious persons who cannot appear pro se, *see Phillips v. Tobin,* 548 F.2d 408, 411 (2d Cir.1976), defendants Greentree and DeVanney must retain new counsel. All new counsel shall file a Notice of Appearance within thirty (30) days of the filing of this Memorandum and Order.

## CONCLUSION

Counts I through VII are dismissed in their entirety as to Market Maker defen-

dants Greentree, Wien, Mikal, First Jersey, Investors Center, and Hill Thompson. Fed. R.Civ.P. 9(b), 12(b)(6). Counts I through VII are further dismissed as to Broker-Dealer defendants Hutton and Fitzgerald, with the exception of Counts II, III, and IV insofar as they assert federal securities law violations against Fitzgerald under the doctrine of respondeat superior. Fed. R.Civ.P. 9(b), 12(b)(6). Leave to replead is granted for Counts V and VI to the extent that plaintiffs failed to plead fraud with the particularity required by Rule 9(b). Leave to replead is denied as to all other counts. Plaintiffs' pendent state law claims in Count VII are dismissed without prejudice and may be brought in the proper state tribunals. Plaintiffs shall file an amended complaint within twenty (20) days of the filing of this Memorandum and Order. Defendants shall file an amended answer within twenty (20) days of the filing of the amended complaint.

Plaintiffs' motion for class and subclass certification is granted in part and denied in part. Fed.R.Civ.P. 23. Certification of the class and subclass defined by plaintiffs is limited to Counts I through VI. Counsel for plaintiffs shall submit a draft of their proposed form of notice to the Court and all opposing counsel within fourteen (14) days from the filing of this Memorandum and Order. Any objections to the proposed notice shall be filed within fourteen (14) days after receipt of the proposed form of notice.

Wien's motion for summary judgment is moot.[14]

All motions to withdraw as counsel of record are granted. Local Rules S.D.N.Y., General Rule 3(c).

SO ORDERED.

---

**14.** Wien's motion for summary judgment is moot in light of the Court's resolution of Wien's motion to dismiss.